Christina A. Rankin
GUESS & RUDD P.C.
1029 W. 3rd Avenue, Suite 400
Anchorage, Alaska 99501
(907) 793-2200 Telephone
(907) 793-2299 Facsimile
crankin@guessrudd.com

Attorneys for Plaintiffs
CERTAIN UNDERWRITERS AT LLOYD'S,
SYNDICATES 2623/623

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| **CERTAIN UNDERWRITERS AT LLOYD'S, SYNDICATES 2623/623,** | ) ) ) ) | |
| Plaintiffs, | ) ) | **Case No. 3:20-cv-00049-TMB** |
| -*vs*- | ) ) | **Jury Trial Demanded** |
| **FOUNDATIONS ASSET MANAGEMENT, LLC, MICHAEL W. SHAMBURGER, AND ROB E. WEDEL,** | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs, Certain Underwriters at Lloyd's, London, Syndicates 2623/623

("Underwriters"), by their counsel, file this Complaint against Defendants Foundations Asset

Management, LLC ("FAM"), Michael W. Shamburger, and Rob E. Wedel (collectively,

"Defendants"). For their causes of action, Underwriters allege as follows:

## NATURE OF THE ACTION

1. This matter involves an insurance coverage dispute regarding the availability of

coverage to Defendants under AFB Financial Services Errors & Omissions Insurance Policy No.

RIA2029631-03, which was subscribed to by Underwriters and issued to FAM for the January 1, 2019 to January 1, 2020 Policy Period (the "Policy" or the "2019 Policy"), in connection with a lawsuit captioned *Michael Easley v. Foundations Asset Management, LLC, et al.*, Case No. 3AN-19-10223CI, Superior Court AK, Third Judicial District at Anchorage (the "*Easley* action").

2.      After receiving notice of the of the *Easley* action, Underwriters issued a November 4, 2019 coverage letter to FAM where Underwriters agreed to defend Defendants in connection with the *Easley* action while expressly reserving their rights to deny coverage and to initiate a declaratory judgment action seeking a judicial determination and declaration of Underwriters' contractual obligations, if any, with respect to the claims asserted by Mr. Easley.

3.      Underwriters have determined that coverage for Defendants in connection with the *Easley* action is precluded by the Designated Individual or Entity Exclusion Endorsement (the "Pooled Investing Exclusion"), Policy Section VI.BB (the "Broker/Dealer Exclusion") and Policy Section VI.E.1 (the "Prior Knowledge Exclusion"). Defendants, however, contend that coverage is available under the Policy for the *Easley* action.

4.      Accordingly, through this action, Underwriters seek an adjudication that Underwriters do not owe Defendants any defense or indemnity obligations in connection with the *Easley* action.

## PARTIES

5.      Underwriters are unincorporated associations with principal offices in London, United Kingdom, and have no members who are citizens of Alaska.

6.      FAM is an Alaska limited liability company with its principal place of business in Anchorage, Alaska.

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 2 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 2 of 22

7.      Upon information and belief, Michael W. Shamburger ("Shamburger") resides in Alaska and is a 50% member of FAM.

8.      Upon information and belief, Rob E. Wedel ("Wedel") resides in Alaska and is a 50% member of FAM.

## JURISDICTION AND VENUE

9.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Complete diversity of citizenship exists between the parties, as Underwriters are citizens of the United Kingdom and other locations which do not include Alaska, and Defendants are citizens of Alaska.  The amount in controversy exceeds the minimum $75,000, exclusive of interest and costs, and an actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

10.     This Court has personal jurisdiction over Defendants in that FAM is a business entity with its principal place of business in the state of Alaska and Shamburger and Wedel reside in Alaska.

11.     Venue is proper in this Court because the *Easley* action is currently pending in Superior Court for the State of Alaska, Third Judicial District at Anchorage, FAM's principal place of business in this district, Shamburger and Wedel reside in this district, and this district is where performance obligations under the Policy, if any such insurance is available, are due.

## FACTUAL BACKGROUND

### The AFB Financial Services Errors & Omissions Insurance Policy

12.     Underwriters subscribed to AFB Financial Services Errors & Omissions Insurance Policy No. RIA2029631-03 which was issued to Foundations Asset Management, LLC for the January 1, 2019 to January 1, 2020 Policy Period (the "Policy").  Subject to its terms

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 3 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 3 of 22

and conditions, the Policy provides Errors & Omissions Insurance (the "E&O Coverage Part"), Directors & Officers Insurance (the "D&O Coverage Part"), and Fiduciary Liability Insurance (the "Fiduciary Coverage Part"). The E&O Coverage Part provides a limit of liability of $1 million per Claim and $2 million in the aggregate for the Policy Period and is subject to a $15,000 each Claim deductible. The E&O Coverage Part has a Retroactive Date of January 1, 2014. A copy of the Policy is attached hereto as Exhibit "A" and incorporated herein by reference.

13. The D&O Coverage Part and the Fiduciary Coverage Part do not apply to provide coverage for Defendants in connection with the *Easley* action. The Starkweather & Shepley Amendatory Endorsement – Coverage Enhancements (the "S&S Endorsement") amends the Policy to include an insuring agreement providing Directors & Officers Insurance. Pursuant to the S&S Endorsement, for the purposes of the D&O Coverage Part only, the Retroactive Date is amended to April 13, 2017. [Declarations Item 6., as amended by the S&S Endorsement]

14. The Insuring Agreement of the E&O Coverage Part provides, in relevant part, that Underwriters agree: "[t]o pay on behalf of the **Insured Damages** and **Claims Expenses** including the **Cost of Corrections,** in excess of the Deductible, which the **Insured** shall become legally obligated to pay because of any **Claim** or **Claims** first made against any **Insured** and reported to the Underwriters during the **Policy Period** or **Extended Reporting Period** (if applicable), arising out of any negligent act, error or omission of the **Insured** in rendering or failing to render **Professional Services** on or after the Retroactive Date shown in Item 6 of the Declarations, except as excluded or limited by the terms, conditions and exclusions of this Policy." [Policy Section I.; Declarations Item 6].

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 4 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 4 of 22

15.     Section IV. of the Policy defines "**Insured**" to include, in relevant part: "[t]he **Named Insured** and any **Subsidiaries** of the **Named Insured** (together the '**Insured Organization**') . . . [and] [a] director, officer or employee of the **Insured Organization**, but only for **Professional Services** rendered on behalf of the **Insured Organization** . . ."  [Policy Section IV.]

16.     Section XI. of the Policy provides: "A. If any **Claim** is made against the **Insured**, the **Insured** shall immediately forward to Underwriters . . . written notice of such **Claim** . . . In no event, shall such notice to the Underwriters be later than the end of the **Policy Period**, [or] the end of the **Extended Reporting Period**, if applicable.  B. If during the **Policy Period** the **Insured** first becomes aware of any circumstance that could reasonably be the basis for a **Claim** it must give written notice to Underwriters . . . as soon as practicable during the **Policy Period**. . . ."  [Policy Section XI.]

17.     Section III.A of the Policy provides, in relevant part, that "Underwriters shall have the right and duty to defend, subject to the Limit of Liability, exclusions and other terms and conditions of this Policy, any **Claim** against the **Insured** seeking **Damages** which are payable under the terms of this Policy . . ."  [Policy Section III.A.]

18.     Section VII.C. of the Policy defines "**Claim**" in relevant part, as: "1. a demand received by any **Insured** for money or services, including the service of suit or institution of arbitration proceedings; 2. a threat or initiation of a suit seeking injunctive relief (meaning a temporary restraining order or a preliminary or permanent injunction); 3. a notice of an investigation or violation(s) of law or regulation initiated by any governmental body or self-regulatory organization arising out of **Professional Services**."  The definition of "**Claim**" also provides that: "[m]ultiple **Claims** arising from or related to the same negligent act, error or

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 5 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 5 of 22

omission or any continuing negligent acts, errors or omissions shall be considered a single **Claim** for the purposes of this Policy, irrespective of the number of Claimants.  All such **Claims** shall be deemed to have been made at the time of the first such **Claim**."  [Policy Section VII.C.]

19.     Section VII.S. of the Policy defines "**Professional Services**," in relevant part, as "services rendered for or advice given to a client or customer by an **Insured** for a fee, remuneration, or other consideration pursuant to a written agreement between the customer/client and the **Insured** and in an **Insured**'s capacity as an appropriately licensed, accredited or certified **Financial Advisor**, **Financial Planner**, **Registered Investment Advisor**, **Registered Representative** and/or **Life Insurance Agent**. . . ."  However, "**Professional Services**" does not include, among other things, "any acquisition or sale of securities by an **Insured Broker/Dealer** for its own account."  [Policy Section VII.S.]

20.     The Pooled Investing Exclusion is added to Section VI. of the Policy and provides: "[t]he coverage under this Insurance does not apply to **Damages**, **Claims Expenses** or other amounts covered under this Policy, incurred with respect to any **Claim** made against you based upon or arising from Professional Services of the individual(s) or entity(ies) designated in the Schedule."  As provided in the Declarations, the Schedule in the "Designated Individual Or Entity Exclusion Endorsement" reads: "Pooled Investing."  [Policy Section VI., as amended by the Pooled Investing Exclusion; Policy Declarations]

21.     The Broker/Dealer Exclusion provides: "[t]he coverage under this Insurance does not apply to **Damages**, **Claims Expenses** or other amounts covered under this Policy, incurred with respect to any **Claim**: . . . BB. For or arising out of any liability the **Insured** may have as a result of the **Insured's** activities in any profession other than when rendering **Professional Services**, including but not limited to **Broker/Dealer**, accountant, actuary, enrolled agent, tax

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 6 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 6 of 22

preparer, lawyer, mortgage broker, property or casualty insurance agent, real estate agent or

broker, securities analyst, third party administrator or administrator of any employee benefit

plan[.]"  [Policy Section VI.BB.]

22.     Section VII.B. of the Policy provides that "'**Broker/Dealer**' shall have the

meaning assigned to that term by the Securities Exchange Act of 1934, as amended; but

**Broker/Dealer** does not mean a person who is a **Registered Representative**."  [Policy Section

VII.B.]

23.     The Prior Knowledge Exclusion provides: "[t]he coverage under this Insurance

does not apply to **Damages**, **Claims Expenses** or other amounts covered under this Policy,

incurred with respect to any **Claim**: . . . E. Arising out of or resulting from any act, error or

omission committed prior to the inception date of this Insurance: 1. if any **Insured** on or before

the inception date knew or could have reasonably foreseen that such act, error or omission might

be expected to be the basis of a **Claim**[.]"  [Policy Section VI.E.]

24.     Section VI.MM. of the Policy provides: "[t]he coverage under this Insurance does

not apply to **Damages**, **Claims Expenses** or other amounts covered under this Policy, incurred

with respect to any **Claim**: . . . MM. Or circumstance that might lead to a **Claim** arising out of

any act, error or omission which took place, or is alleged to have taken place, prior to the

Retroactive Date as set forth in Item 6. of the Declarations."  [Policy Section VI.MM.]

<u>**Underwriting Correspondence Relating to the First Policy**</u>
<u>**Issued by Underwriters to FAM**</u>

25.     The first policy issued by Underwriters to FAM provided coverage for the

January 1, 2016 to January 1, 2017 Policy Period (the "2016 Policy").  Subsequently, FAM

renewed the 2016 Policy with Underwriters for the January 1, 2017 to January 1, 2018 Policy

Period, the January 1, 2018 to January 1, 2019 Policy Period, and the January 1, 2019 to January 1, 2020 Policy Period.

26.     On January 7, 2016, Kevin Sears of Lockton Affinity, LLC ("Lockton"), FAM's authorized representative, reached out to James Eaton of Beazley advising, in part:

> James, this is a 1/1/16 new business opportunity that is being referred b/c they do 10% alternative investments. We would also need to backdate coverage. . . . When we pressed for info, the insured noted that they have a real estate program that accounts for 10% of revenue, and they do want coverage on this. They say it is a first deed of trust program. The website has some info on this, under the 'pooled investing' tab. I wasn't sure if you wanted more information on this or if we are ok on this piece.

27.     Mr. Eaton responded that same day, January 7, 2016, stating, "[d]o not think I like the pooled investment piece.  Happy with pricing if we exclude that but would not want to cover."

28.     Each policy issued by Underwriters to FAM, starting with the 2016 Policy, through and including the 2019 Policy, has included some form of an endorsement precluding coverage for "Pooled Investing."

**<u>The SEC Investigation</u>**

29.     In (or before) June 2016, FAM received a deficiency letter from the Securities and Exchange Commission ("SEC") relating to FAM's inadequate disclosure to its clients of its compensation arrangements with Alaska Financial Company III LLC ("AFC").

30.     In June 2016, FAM issued a new written disclosure form to its clients who invested in AFC which disclosed the compensation FAM received for having its clients invest in AFC and the conflicts of interest associated with such investments.

31.     On or around September 14, 2017, FAM received a subpoena from the SEC in connection with "an investigation . . . to determine if there have been violations of certain

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 8 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 8 of 22

provisions of the federal securities laws." (the "September 14 Subpoena"). Although the

September 14 Subpoena is captioned "[i]n the Matter of Alaska Financial Company III LLC (SF-

03923)," the requested documents are extensive and highly focused on FAM. FAM retained the

law firm Ryan, Swanson & Cleveland to represent Defendants in connection with the September

14 Subpoena.

32.     On or around September 14, 2017, Shamburger and Wedel individually received

separate letters from the SEC enclosing the September 14 Subpoena to FAM and advising them

to preserve evidence "including but not limited to documents concerning any investments offered

by the AFC III Entities, fees received by you and/or Foundations Asset Management, LLC

('FAM') from or in connection with any investments offered by the AFC III Entities, and the

financial statements (audited or unaudited) and/or financial condition of the AFC III Entities."

33.     On March 22, 2018, the SEC announced a settlement with McKinley Mortgage

Company, LLC, which managed AFC. That announcement stated, "[t]he Securities and

Exchange Commission today announced settled charges against the operators of a real estate

investment business who engaged in a years-long scheme to bilk hundreds of investors –

including many retail investors – out of millions of dollars."

34.     On April 27, 2018, Shamburger, through his counsel, received a subpoena from

the SEC seeking his testimony in San Francisco, California in connection with the SEC's

investigation into potential violations of certain provisions of the federal securities laws.

35.     On May 2, 2018, Wedel, through his counsel, received a subpoena from the SEC

seeking his testimony in San Francisco, California in connection with the SEC's investigation

into potential violations of certain provisions of the federal securities laws.

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 9 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 9 of 22

36.     On July 24, 2019, Defendants entered into a settlement with the SEC and the SEC issued an Order containing various findings and violations of law (the "Order"). A copy of the Order is attached hereto as Exhibit "B". In the Order, the SEC summarized the proceedings as concerning "conflicts of interest that were not properly disclosed *and broker-dealer registration violations* by investment adviser FAM and its two principals, Shamburger and Wedel." (emphasis added). The Order finds that "FAM, through Shamburger and Wedel, solicited clients and recommended that they invest approximately $12 million in AFC III promissory notes." As a result of these recommendations, "[f]rom May 2013 through June 2016 . . . FAM improperly received approximately $254,000 in compensation from private real estate fund Alaska Financial Company III LLC ('AFC III') and AFC III's manager McKinley Mortgage Co. LLC ('McKinley'), *while acting as an unregistered broker*." (Emphasis added). However, the Order states that this compensation "was not properly disclosed to FAM clients . . ." Moreover, "FAM failed to satisfy its fiduciary duties owed to clients by failing to provide adequate written and verbal disclosures about the conflicts of interest FAM had regarding AFC III investments." The Order further finds that FAM, through Shamburger and Wedel, "[a]cted as an Unregistered Broker" in connection with its AFC offerings, even though "FAM has never been registered as a broker-dealer. [And] Shamburger and Wedel were associated with a registered broker-dealer until December 2013, but have not been associated with a registered broker-dealer since then." Accordingly, the Order determines that "FAM willfully violated, and Shamburger and Wedel caused FAM's violations of, Section 15(a) of the Exchange Act, which prohibits any broker or dealer from making use of the mails . . . to induce or attempt to induce the purchase or sale of, any security unless such broker or dealer is registered in accordance with Section 15(b) of the Exchange Act."

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 10 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 10 of 22

37. The Order also finds that FAM provided false statements in its ADV Brochures filed with the SEC in March 2014 and March 2015 which stated that "[n]either FAM nor its supervised persons accept any compensation for the sale of securities or other investment products" and "FAM does not receive any economic benefit, directly or indirectly from any third party for advice rendered to FAM clients." As a result of these false statements, the SEC found that "FAM willfully violated, and Shamburger caused FAM's violations of, Section 207 of the Advisers Act . . ."

## FAM's Request for Coverage for Private Placements
## Prior to the Issuance of the 2019 Policy

38. In December 2018, in connection with the renewal of the 2019 Policy, FAM attempted to obtain coverage for claims potentially arising out of investments in AFC. Specifically, on December 28, 2018, Jessica Thayer at Starkweather & Shepley emailed Lockton providing information concerning AFC III and stating that FAM "is requesting that the following private placement be covered under the policy for the 1/1/19 – 1/1/20 policy period." Lockton responded to Ms. Thayer on January 10, 2019 stating, "[o]ur underwriters are not going to be able to approve adding Alaska Financial Company III, LLC to the current policy."

39. On January 18, 2019, Ms. Thayer advised Shamburger that "your current insurer [Underwriters] is not willing to add coverage for this private placement. We could approach other insurers, but typically premiums start at $7,000 for this coverage." That same day, Shamburger responded to Ms. Thayer: "I understand. Would you mind approaching at least one other [insurer] for us?" After obtaining additional information from Shamburger regarding FAM's relationship with AFC, Ms. Thayer responded to Shamburger on March 18, 2019 stating that "[a]ll of the major U.S> [sic] insurers have declined to quote an d [sic] five London insurers

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 11 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 11 of 22

are also declined.  There is one remaining insurer, but they would have a minimum deductible of $150,000 per claim and minimum of premium of $30,000 for a $1M aggregate limit.  Given this, would you still like us to pursue this option for you?"  Shamburger responded to Ms. Thayer on March 18, 2019, "[n]o, but thank you for doing the leg work on this!"

### FAM's Notice to Underwriters

40.    On August 5, 2019, Shamburger, on behalf of FAM, first provided Underwriters with notice "of a circumstance that could reasonably be the basis for a claim in the future." (The "August 5 Notice").  The August 5 Notice advised that following an SEC investigation, the SEC charged FAM "with violations regarding the above private placement [with AFC]."  Further, FAM advised that it "agreed to settle with the SEC effective 7/24/19, without admitting or denying the findings."  Accordingly, the August 5 Notice advised that "[b]ased on the above SEC actions against the private placement and our firm, [FAM] believe[s] it is prudent to notify you for possible claims in the future from clients."

### The *Easley* Action

41.    As stated above, this action pertains to the availability of insurance coverage for Defendants in connection with the *Easley* action.  The Complaint in the *Easley* action was filed by Mr. Easley against FAM, Shamburger, and Wedel on September 26, 2019 (the "Complaint").  A copy of the Complaint is attached hereto as Exhibit "C" and incorporated herein by reference.

42.    The Complaint asserts that FAM and Mr. Easley were parties to a contract wherein Defendants would provide investment advice to Mr. Easley in exchange for compensation.  Mr. Easley contends that "FAM, through Shamburger and Wedel, solicited and recommended Plaintiff invest in private real estate fund Alaska Financial Company III LLC ('AFC III') and AFC III's manager McKinley Mortgage Co. LLC ('McKinley') promissory

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 12 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 12 of 22

notes." As a result of this recommendation, "Shamburger and Wedel received compensation from AFC III and McKinley which was more than double their typical fee." Mr. Easley asserts that this "conflict of interest was not adequately disclosed" to him. The Complaint alleges that "Shamburger and Wedel made assurances and misrepresentations to [Mr. Easley] regarding the secureness of [his] investment in AFC III . . ." Mr. Easley contends that he "relied upon these assurances and misrepresentations. . . ." However, Mr. Easley asserts that "AFC III was insolvent before Shamburger and Wedel persuaded Plaintiff to invest in AFC III" and that "Shamburger and Wedel failed to investigate and/or properly advise" him of AFC's financial situation. The Complaint alleges that "Shamburger and Wedel's unlawful conduct was negligent, reckless, and/or intentional."

43.     Mr. Easley contends that FAM's conduct caused him economic and non-economic damages. As a result, Mr. Easley asserts causes of action against Defendants for (1) Violation of Alaska's Unfair Trade Practices Act, AS 45.50.471; (2) Professional Negligence/Malpractice Against Defendants; (3) Violation of Alaska's Covenant of Good Faith and Fair Dealing; (4) Violation of Fiduciary Duties; and (5) Violation of Alaska's Securities Act. As a result of Defendants' alleged conduct, Mr. Easley seeks special, general, statutory and punitive damages as well as pre- and post-judgment interest, costs, equitable relief and attorney's fees.

### Underwriters' November 4, 2019 Letter

44.     In response to the notice provided on behalf of FAM regarding the *Easley* action, Underwriters issued a letter to FAM dated November 4, 2019, agreeing to defend Defendants subject to various coverage defenses and reservations (the "November 4 Letter"). In the November 4 Letter, Underwriters advised that "there are a number of issues which lead

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 13 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 13 of 22

Underwriters to believe there is no coverage under the Policy for the allegations in the Complaint." In addition to the various terms, conditions, and exclusions discussed in the November 4 Letter, "Underwriters further reserve[d] their rights as to all other policy provisions, exclusions, terms, conditions and limitations. Nothing in this letter may be construed as a waiver by Underwriters as to any of their rights under the Policy." Moreover, "Underwriters expressly reserve[d] their right to deny coverage for any of the claims asserted in the Complaint, and Underwriters further reserve[d] their right to initiate any and all legal actions, including but not limited to a declaratory judgment action seeking a judicial determination and declaration of Underwriters' contractual obligations, if any, with respect to the claims asserted by Easley, or to deny coverage with respect to one or more of the claims asserted in the Complaint and/or to withdraw from the defense of the Complaint, in whole or in part, or to assert Underwriters' legal and/or equitable rights in any other manner permitted by law and/or equity." Finally, Underwriters advised Defendants of their right to independent counsel and asked them to "advise whether FAM wishes to waive its rights [to independent counsel] and consent to continued representation by counsel appointed by Underwriters, Brewster Jamieson."

### Defendants' January 15, 2020 Letter

45. On January 15, 2020, Defendants advised that they had "opted to continue to be represented by Brewster Jamieson in the *Easley* lawsuit." Moreover, Defendants contested the coverage defenses raised in Underwriters' November 4 Letter and asserted that Underwriters are "presently without sufficient information upon which to determine that coverage under the Policy may be denied" and that Underwriters have "no defensible factual basis for denying coverage . . . ." Further, Defendants asserted that Underwriters are "obligated to provide them with the coverage for which they bargained."

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 14 of 22

Case 3:20-cv-00049-TMB    Document 1-2    Filed 03/02/20    Page 14 of 22

## Underwriters' February 13, 2020 Letter

46.     On February 13, 2020, Underwriters issued a letter to Defendants' coverage counsel providing Underwriters' updated claims analysis in connection with the *Easley* action (the "February 13 Letter").  In the February 13 Letter, Underwriters advised that the Policy does not provide coverage to Defendants for **Claims** based upon or arising from "Pooled Investing" and that the underwriting history surrounding the renewal of the Policy for the 2019-2020 **Policy Period** confirms the parties' mutual understanding that the Policy does not provide coverage for **Claims** involving AFC.  The February 13 Letter also advised of various other exclusions and provisions which are triggered by the allegations in the *Easley* action, including, but not limited to, the Broker/Dealer Exclusion, the Prior Knowledge Exclusion and the Retroactive Date/the Retroactive Date Exclusion.  Underwriters agreed to continue to defend FAM in the *Easley* action but explicitly reserved their right to deny coverage and to seek a declaratory judgment regarding Underwriters' coverage obligations.

## The Instant Coverage Dispute

47.     Following further evaluations of the *Easley* action, Underwriters determined that coverage under the Policy is not available to Defendants in connection with the *Easley* action in light of the Pooled Investing Exclusion, the Broker/Dealer Exclusion, and the Prior Knowledge Exclusion.

48.     Upon information and belief, Defendants disagree with Underwriters' coverage assessment and have taken the position that coverage for Defendants is available under the Policy in connection with the *Easley* action.

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 15 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 15 of 22

## FIRST CAUSE OF ACTION

### (Declaratory Relief – Pooled Investing Exclusion)

49.     Underwriters repeat and reallege each and every allegation contained in Paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50.     The Pooled Investing Exclusion bars coverage for Defendants for any Claims Expenses they have or will incur in connection with the *Easley* action as well as coverage for any settlement or judgment reached in connection with the *Easley* action.

51.     On information and belief, Defendants contend that the Pooled Investing Exclusion is inapplicable and that the Policy provides coverage for Claims Expenses and indemnity in connection with the *Easley* action.

52.     The Pooled Investing Exclusion is added to Section VI. of the Policy and provides: "[t]he coverage under this Insurance does not apply to **Damages**, **Claims Expenses** or other amounts covered under this Policy, incurred with respect to any **Claim** made against you based upon or arising from Professional Services of the individual(s) or entity(ies) designated in the Schedule."  As provided in the Declarations, the Schedule in the "Designated Individual Or Entity Exclusion Endorsement" reads: "Pooled Investing."  [Policy Section VI., as amended by the Pooled Investing Exclusion; Policy Declarations].

53.     Here, coverage is unavailable for Defendants under the Policy because the *Easley* action seeks Damages and Claims Expenses incurred with respect to a Claim made against Defendants based upon or arising from Professional Services relating to "Pooled Investing." Because the *Easley* action falls within the Pooled Investing Exclusion, coverage is unavailable for Defendants under the Policy, among other reasons.

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 16 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 16 of 22

54.     An actual and justiciable controversy exists between Underwriters and Defendants regarding whether coverage for Claims Expenses or indemnity is available to Defendants under the Policy in connection with the *Easley* action.

55.     Accordingly, Underwriters are entitled to a judicial declaration that (1) the Policy does not provide coverage for Claims Expenses incurred by Defendants or that will be incurred by Defendants in connection with the *Easley* action and (2) the Policy does not provide coverage for any settlement or judgment reached in connection with the *Easley* action.

## SECOND CAUSE OF ACTION

### (Declaratory Relief – Broker/Dealer Exclusion)

56.     Underwriters repeat and reallege each and every allegation contained in Paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57.     The Broker/Dealer Exclusion bars coverage for Defendants for any Claims Expenses they have or will incur in connection with the *Easley* action as well as coverage for any settlement or judgment reached in connection with the *Easley* action.

58.     On information and belief, Defendants contend that the Broker/Dealer Exclusion is inapplicable and that the Policy provides coverage for Claims Expenses and indemnity in connection with the *Easley* action.

59.     The Broker/Dealer Exclusion provides: "[t]he coverage under this Insurance does not apply to **Damages**, **Claims Expenses** or other amounts covered under this Policy, incurred with respect to any **Claim**: . . . BB. For or arising out of any liability the **Insured** may have as a result of the **Insured's** activities in any profession other than when rendering **Professional Services**, including but not limited to **Broker/Dealer**, accountant, actuary, enrolled agent, tax preparer, lawyer, mortgage broker, property or casualty insurance agent, real estate agent or

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 17 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 17 of 22

broker, securities analyst, third party administrator or administrator of any employee benefit plan[.]" [Policy Section VI.BB.]

60. Here, coverage is unavailable for Defendants under the Policy because the *Easley* action seeks Damages and Claims Expenses incurred with respect to a Claim made against Defendants "[f]or arising out of any liability the **Insured** may have as a result of the **Insured's** activities in any profession other than when rendering **Professional Services**, including but not limited to **Broker/Dealer** . . . ." Because the *Easley* action falls within the Broker/Dealer Exclusion, coverage is unavailable for Defendants under the Policy, among other reasons.

61. An actual and justiciable controversy exists between Underwriters and Defendants regarding whether coverage for Claims Expenses or indemnity is available to Defendants under the Policy in connection with the *Easley* action.

62. Accordingly, Underwriters are entitled to a judicial declaration that (1) the Policy does not provide coverage for Claims Expenses incurred by Defendants or that will be incurred by Defendants in connection with the *Easley* action and (2) the Policy does not provide coverage for any settlement or judgment reached in connection with the *Easley* action.

## THIRD CAUSE OF ACTION

### (Declaratory Relief – Prior Knowledge Exclusion)

63. Underwriters repeat and reallege each and every allegation contained in Paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64. The Prior Knowledge Exclusion bars coverage for Defendants for any Claims Expenses they have or will incur in connection with the *Easley* action as well as coverage for any settlement or judgment reached in connection with the *Easley* action.

65.     On information and belief, Defendants contend that the Prior Knowledge Exclusion is inapplicable and that the Policy provides coverage for Claims Expenses and indemnity in connection with the *Easley* action.

66.     The Prior Knowledge Exclusion provides: "[t]he coverage under this Insurance does not apply to **Damages**, **Claims Expenses** or other amounts covered under this Policy, incurred with respect to any **Claim**: . . . E. Arising out of or resulting from any act, error or omission committed prior to the inception date of this Insurance: 1. if any **Insured** on or before the inception date knew or could have reasonably foreseen that such act, error or omission might be expected to be the basis of a **Claim**[.]" [Policy Section VI.E.].

67.     Here, coverage is unavailable for Defendants under the Policy because the *Easley* action seeks Damages and Claims Expenses incurred with respect to a Claim made against Defendants "[a]rising out of or resulting from any act, error or omission committed prior to the inception date of this Insurance: 1. if any **Insured** on or before the inception date knew or could have reasonably foreseen that such act, error or omission might be expected to be the basis of a **Claim**[.]" Because the *Easley* action falls within the Prior Knowledge Exclusion, coverage is unavailable for Defendants under the Policy, among other reasons.

68.     An actual and justiciable controversy exists between Underwriters and Defendants regarding whether coverage for Claims Expenses or indemnity is available to Defendants under the Policy in connection with the *Easley* action.

69.     Accordingly, Underwriters are entitled to a judicial declaration that (1) the Policy does not provide coverage for Claims Expenses incurred by Defendants or that will be incurred by Defendants in connection with the *Easley* action and (2) the Policy does not provide coverage for any settlement or judgment reached in connection with the *Easley* action.

## FOURTH CAUSE OF ACTION

### (Declaratory Relief, Other Defenses)

70.     Underwriters repeat and reallege each and every allegation contained in Paragraphs 1 through 70 of this Complaint as if fully set forth.

71.     Coverage for the *Easley* action is barred or limited by operation of other provisions in the Policy, including but not limited to, whether the *Easley* action is a Claim "first made" during the Policy Period, whether FAM complied with its notice obligations (Policy Section XI.), the definition of Damages (Policy Section VII.F.), and whether the Retroactive Date/the Retroactive Date Exclusion (Policy VI.MM.) and/or the Related Proceeding Exclusion (Section VI.R.) preclude coverage.

72.     An actual and justiciable controversy exists between Underwriters and Defendants regarding whether coverage for Claims Expenses or indemnity is available to Defendants under the Policy in connection with the *Easley* action by operation of these provisions.

73.     Accordingly, Underwriters are entitled to a judicial declaration that (1) the Policy does not provide coverage for Claims Expenses incurred by Defendants or that will be incurred by Defendants in connection with the *Easley* action and (2) the Policy does not provide coverage for any settlement or judgment reached in connection with the *Easley* action.

## FIFTH CAUSE OF ACTION

### (Alternatively, Reformation)

74.     Underwriters repeat and reallege each and every allegation contained in Paragraphs 1 through 74 of this Complaint as if fully set forth herein.

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 20 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 20 of 22

75. At the time of entering into the 2019 Policy, the parties knew and understood that the Policy would not provide coverage for Claims in connection Defendants' placement of funds with AFC, such as the *Easley* action.

76. Accordingly, if it is determined that, despite the intention of the parties, the language of the Policy as drafted does not preclude coverage for Claims in connection Defendants' placement of funds with AFC, such as the *Easley* action, Underwriters seek reformation of the Policy to reflect the parties' intent to preclude coverage for such Claims.

## PRAYER FOR RELIEF

WHEREFORE, Underwriters request that the Court enter judgment in their favor against Defendants as follows:

A. On the First Cause of Action, a judicial declaration that the Pooled Investing Exclusion bars coverage for any Claims Expenses incurred by Defendants or that will be incurred by Defendants as well as coverage for any settlement or judgment reached in connection with the *Easley* action.

B. On the Second Cause of Action, a judicial declaration that the Broker/Dealer Exclusion bars coverage for any Claims Expenses incurred by Defendants or that will be incurred by Defendants as well as coverage for any settlement or judgment reached in connection with the *Easley* action.

C. On the Third Cause of Action, a judicial declaration that the Prior Knowledge Exclusion bars coverage for any Claims Expenses incurred by Defendants or that will be incurred by Defendants as well as coverage for any settlement or judgment reached in connection with the *Easley* action.

D. On the Fourth Cause of Action, a judicial declaration that certain provisions of the

Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 21 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 21 of 22

Policy bar coverage for any Claims Expenses incurred by Defendants or that will be incurred by Defendants as well as coverage for any settlement or judgment reached in connection with the *Easley* action.

E.      On the Fifth Cause of Action, reformation of the Policy to the extent that it is determined that, despite the intention of the parties, the Policy as drafted does not preclude coverage for Claims in connection Defendants' placement of funds with AFC, such as the *Easley* action.

E.      Prejudgment interest;

F.      Costs of suit and attorneys' fees; and

G.      Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Underwriters demand a jury trial for all claims properly tried to a jury.

DATED at Anchorage, Alaska, this 28th day of February, 2020.

GUESS & RUDD P.C.


By:__s/Christina A. Rankin_____
Christina A. Rankin, AK Bar No. 0306034

41516491
Complaint for Declaratory Relief
Certain Underwriters at Lloyds's v. Foundations Asset Mgmt., et al., Case No. 3:20-cv-_____
Page 22 of 22

Case 3:20-cv-00049-TMB   Document 1-2   Filed 03/02/20   Page 22 of 22